IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER IVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: _____ |
| | ) | JURY TRIAL |
| | ) | |
| HARDEMAN COUNTY, TENNESSEE | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, JENNIFER IVY, by and through her attorneys, alleges for her Complaint against Hardeman County, Tennessee through its Sheriff's Department as follows:

### I. INTRODUCTION

1. Plaintiff brings this action against Defendant for legal relief to redress unlawful violations of Plaintiff's rights under the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601, *et seq* and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-2-101 *et seq* which prohibits discrimination on the basis of sex and pregnancy.

### II. THE PARTIES

### A. THE PLAINTIFF

2. Plaintiff, Jennifer Ivy, currently resides in Brownsville, Tennessee and is a citizen of the United States.

3. Plaintiff worked for Defendant since 2004 before being advised of her termination on or about January 8, 2013.

4.     At times relevant hereto, Plaintiff was an FMLA "eligible employee", specifically under 29 U.S.C. Section 2611(2)(A) because she had been employed longer than 12 months and, prior to the commencement of her requested leave, had exceeded 1,250 hours of work.

### B. THE DEFENDANT

5.     Defendant, Hardeman County, Tennessee, is located within the Western District of Tennessee, Western Division, and is an employer within the provisions of the FMLA, specifically under 29 U.S.C. Section 2611(4)(A).

6.     The Defendant is bound by the rules and regulations of the Family and Medical Leave Act.

### III. JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The court has supplemental jurisdiction over claims under the Tennessee Human Rights Act (THRA) pursuant to 28 U.S.C. §1367.

8.     Venue is proper in the Western District of Tennessee under 28 U.S.C. §1391(b)-(c) because the Defendant "resides" within the District and the matters accrued within the District.

### IV. FACTS

9.     In 2004, Plaintiff began working for Defendant, Hardeman County, Tennessee through its Sheriff's Department, and worked periodically after that before becoming a full-time Deputy Officer in May 2010.

10.    Plaintiff is the only female in the entire Deputy department (of approximately 30 employees).

11.    Plaintiff became pregnant in 2011.

12.     Unfortunately, Defendant treated Plaintiff, a pregnant female officer, differently than it treats male officers.

13.     For example, throughout her pregnancy, Plaintiff was forced to patrol an area of the County without an open service station (due to the late hours of her patrol) for her to use the restroom.  As a result, when Plaintiff was forced to go outside her patrol territory in order to use the restroom in a facility open in another part of the County, Defendant, through its Captain Kennemore, reprimanded Plaintiff.  However, other officers routinely left their patrol areas and went to other parts of the County merely to eat lunch without repercussion.

14.     When Plaintiff voiced her concerns to Captain Kennemore about the fact that she was pregnant and could not patrol for hours without being able to use a restroom facility, Captain Kennemore stated to Plaintiff, "Yeah I forgot you can't just go into the woods and whip it out." No accommodation was ever made for Plaintiff.

15.     After having her son on April 27, 2012, Plaintiff was initially on a leave of absence based upon her own personal accumulated time as well as paid time "donated" from other co-workers as permitted by the Department's policies and/or practice.  However, on or about the beginning of July 2012, Defendant instructed Plaintiff that it had discontinued the policy to permit donated time to co-workers and as a result, she had to switch to FMLA leave thereby no longer receiving donated (paid) time from other co-workers.

16.     Defendant did switch Plaintiff to unpaid FMLA leave for the remainder of her absence associated with the birth of her son and her and her son's resultant serious health complications.  However, upon information and belief, and after telling Plaintiff that this policy had been discontinued, Defendant permitted (and still permits), male non-pregnant employees to continue using donated time.

17.     Since his birth, Plaintiff's son has suffered from a "serious health condition" in which he has difficulty associated with breathing and momentarily ceases breathing.

18.     On or about the early morning hours of January 2, 2013, Plaintiff's son who was approximately eight (8) months old, was taken to Lebonheur Children's Hospital for treatment due to his breathing condition in combination with a lung infection, the flu, and strep throat all of which were causing him to run a severely high fever, have vomiting, and diarrhea.

19.     Lebonheur Children's Hospital provided Plaintiff's son with a spacer, an albuterol inhaler, and wrote Plaintiff a note taking her off work from January 2, 2013 through January 4, 2013 so that she would have time to follow up with her son's primary pediatrician in the interim.

20.     Upon discharge, Plaintiff placed a call to her son's pediatrician at Hardeman County Community Health Center who told her to bring her son in right away.

21.     This pediatrician saw Plaintiff's son that same day, January 2, 2013, and prescribed additional medications finding that Plaintiff's son's condition was indeed serious and would require Plaintiff to be off work in order to care for him.

22.     Accordingly, the pediatrician wrote Plaintiff an excuse slip stating that he had seen Plaintiff's son that day.  The pediatrician also wrote on a separate note on a prescription pad dated January 2, 2013 which instructed Defendant: "Please provide the FMLA form.  She is being put on FMLA due to child's condition."

23.     Plaintiff took all three notes to Defendant's offices the night of January 2, 2013.

24.     Lieutenant Greg Brown was the supervisor on shift present when Plaintiff presented her son's physician's notes and she explained that she would be going out on FMLA leave to care for him.

25.     Lieutenant Brown additionally witnessed Plaintiff call Sergeant Matthews and inform him that her son was very ill and that she would need to go out on FMLA leave in order to care for him.  Additionally, Plaintiff informed Sergeant Matthews that she had slid copies of the physician's notes, including the one addressed to Defendant to provide the FMLA paperwork, under Captain Kennemore's door as well as placed a copy of them in her own box should another officer need to see them.

26.     During her phone conversation with Sergeant Matthews, Sergeant Matthews asked if she knew how long she would be out and Plaintiff responded that she did not.  Plaintiff then asked Sergeant Matthews if she needed to provide anyone else a copy of her son's physician's notes and Sergeant Matthews said everything was in order as long as she had slid copies under Captain Kennemore's door.  Additionally, Plaintiff asked Sergeant Matthews if she needed to contact anyone else and he responded in the negative explaining that she had done everything she needed to do to let Defendant know she would be out with her son and needed FMLA leave.

27.     Despite the Sergeant's assurances that she had done everything that was required of her, Plaintiff still attempted to let others know of her need for leave.  She placed a phone call leaving a voicemail for Captain Kennemore to call her back which went unreturned.   She additionally spoke with the dispatcher on duty the night of January 2, 2013 and let her know that she would be taking FMLA leave and thus, unable to work for an uncertain amount of time.

28.     Having informed Defendant of her need for FMLA leave, Plaintiff went home, took care of her sick son and waited for Defendant to contact her and provide the requested FMLA paperwork to be completed by her son's physician.

29. Unfortunately, Defendant did not comply with its requirements under the FMLA to provide prompt notification of whether Plaintiff's FMLA leave would be approved or disapproved, nor provide her with any certification paperwork as requested.

30. Instead, on January 8, 2013 Plaintiff received a phone call from an employee in charge of the payroll who informed Plaintiff that she had been terminated and needed to speak with Chief Davis.

31. Chief Davis subsequently called Plaintiff later that same day (January 8, 2013) and told Plaintiff that she had been terminated for "job abandonment" for as he alleged not coming to work or letting anyone know she would not be at work for her scheduled shifts on January 4 and 5, 2013. Plaintiff responded that this was untrue and that she had told everyone she was supposed to inform that she was requesting, and thought she was on, FMLA leave to take care of her son. Chief Davis responded that, "I don't know a lot about FMLA leave but we are going to take this one step at a time."

32. Rather than rectify its decision, however, Defendant used its false reason of "failure to notify of need to be absent and job abandonment" to proceed with Plaintiff's termination having officers immediately come to Plaintiff's house the night of January 8, 2013 to retrieve Defendant's property (badge, gun, car) from her.

33. Additionally, Plaintiff received a Separation Notice dated January 9, 2013 and signed by Chief Davis in the mail again stating incorrectly that Plaintiff had "abandoned her job."

34. Defendant's actions alleged herein have caused Plaintiff pain, suffering, loss of her position, pay and benefits.

## V. COUNT ONE

35. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-34 herein.  By its actions alleged herein, Defendant violated the provisions of Section 2615(a)(1) of the FMLA by interfering with, restraining and/or denying Plaintiff the exercise of or the attempt to exercise her rights under the FLMA, i.e. failing to provide Plaintiff with prompt notification that her leave would or would not be designated as FMLA leave within two business days of Plaintiff's notification to Defendant that she had requested such leave and/or denying Plaintiff FMLA leave (and eventual job restoration) without "negative" action.

## VI. COUNT TWO

36. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-35 herein. By its actions alleged herein, Defendant violated the provisions of Section 2615(a)(2) of the FMLA by discharging and/or otherwise unlawfully discriminating against the Plaintiff in whole or in part (i.e. motivating factor) for exercising her rights under the FMLA, i.e. taking adverse action of termination of employment because Plaintiff attempted to again take FMLA qualifying leave and did use what amounts to FMLA qualifying leave.

## VII. COUNT THREE

37. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-35 herein.  By its actions alleged herein, Defendant violated the provisions of the Tennessee Human Rights Act because Plaintiff's sex and/or pregnancy were motivating factors in Defendant's decision to terminate Plaintiff.

## IX. PRAYER FOR RELIEF

38. WHEREFORE, the Plaintiff prays for the following relief:

   A. That proper process issue along with a copy of this complaint requiring the

Defendants to appear and answer;

B. That Plaintiff be awarded damages in the amount of any wages, salary, employment benefits or other compensation, including, but not limited to back pay, immediate reinstatement or front pay, plus an equal amount of liquidated damages and/or prejudgment interest;

C. Any actual monetary loss sustained by the Plaintiff, plus an equal amount of liquidated damages and/or prejudgment interest;

D. Compensation for emotional harm, including worry, anxiety, distress, anguish, and embarrassment;

E. Reasonable attorneys' fees;

F. The costs and expenses of this action;

G. Such other legal and equitable relief to which Plaintiff may be entitled; and

H. Plaintiff further demands a Jury to try this cause.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER, PLC**

s/Michael L. Russell_____
Michael L. Russell (TN Bar No. 020268)
Jessica F. Salonus (TN Bar No. 28158)
Kara B. Hunter (TN Bar No. 30199)
101 North Highland Ave
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
mrussell@gilbertfirm.com
jsalonus@gilbertfirm.com
khunter@gilbertfirm.com

**HARDEE MARTIN & DONAHOE, P.A**

C. Mark Donahoe
213 East Lafayette Street
Jackson, Tennessee 38301
mdonahoe@hmddpa.com

ATTORNEYS FOR PLAINTIFF